Defendant-appellant, Micah DiSabato, appeals from the decision of the Cuyahoga County Common Pleas Court granting plaintiff-appellee, Majestic Steel Services, Inc.'s, motion to disqualify counsel. For the reasons stated below, we affirm.
On January 8, 1998, appellee filed a complaint against appellant, its former employee, seeking money damages and injunctive relief for appellant's alleged violation of a non-compete agreement. The complaint alleged that appellee breached the agreement by 1) accepting a position with a direct competitor of appellee following the termination of his employment with appellee; 2) disclosing confidential and proprietary information and trade secrets; and 3) soliciting business away from appellee.
On February 10, 1999, Kenneth B. Baker, Esq. (Baker) and the law firm of Javitch, Block, Eisen Rathbone PLL (Javitch Block) entered an appearance on behalf of appellant. On February 18, 1999, Baker filed appellant's answer and counterclaim.
On April 2, 1999, appellee filed its motion to disqualify Baker and Javitch Block as counsel for appellant. In support of its motion, appellee attached the affidavit of Peter Doyle, its general manager, who averred that Baker and Javitch Block had represented appellee as outside counsel from 1992 through 1997 in a wide variety of matters, including drafting and providing advice to appellee concerning employment agreements which contained covenants not to compete similar to the covenant not to compete at issue in this case. Doyle also averred that in the course of his representation of appellee, Baker was involved in efforts to enforce appellee's non-compete agreements and, therefore, was fully aware of appellee's position, policy and strategy concerning the negotiation and enforcement of appellee's covenants not to compete. Doyle stated further that Baker was also involved in other employment law matters for appellee, including employment law litigation; and that during his representation of appellee, Baker learned confidential information concerning appellee's policy and strategy regarding the same types of claims as the claims made in this case.
The trial court granted appellee's motion to disqualify counsel on May 20, 1999. Appellant timely appealed, presenting one assignment of error for our review:
 THE TRIAL COURT PREJUDICIALLY ERRED IN GRANTING PLAINTIFF-APPELLEE'S MOTION TO DISQUALIFY COUNSEL.
An order granting a motion to disqualify counsel is a final appealable order. Kala v. Aluminum Smelting Refining Co., Inc.
(1998), 81 Ohio St.3d 1, 3; State, ex. rel. Corn v. Russo (June 4, 1999) Cuyahoga App. No. 75349, unreported.
A trial court has inherent authority to supervise members of the bar appearing before it, and this necessarily includes the power to disqualify counsel in specific cases. Kala, 81 Ohio St. 3
at 4, citing Morgan v. North Coast Cable Co. (1992).63 Ohio St.3d 156, 161. The trial court has wide discretion in the consideration of a motion to disqualify counsel. Royal Indemn.Co. v. J.C. Penney Co. (1986), 27 Ohio St.3d 31, 33-34. A trial court's determination will not be reversed upon appeal absent an abuse of discretion. Phillips v. Haidet (1997), 119 Ohio App.3d 322,324; Centimark Corp. v. Brown Sprinkler Serv. (1993),85 Ohio App.3d 485, 487. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
Issues of disqualification of counsel for conflicts arising as a result of former representation present the sensitive dilemma of protecting the confidentiality of the client-attorney relationship without needlessly interfering with a litigant's freedom to proceed with legal counsel of choice. City ofCleveland v. Cleveland Elec. Illum. Co. (N.D. Ohio 1976),440 F. Supp. 193, 195. Thus, courts should be mindful that disqualification of an attorney "is a drastic measure which should not be imposed unless absolutely necessary." Spivey v.Bender (1991), 77 Ohio App.3d 17, 22.
In Dana Corp. v. Blue Cross Blue Shield Mut. of N. Ohio (C.A. 6, 1990), 900 F.2d 882, 885, the Sixth Circuit Court of Appeals set forth a three-part test for determining whether counsel should be disqualified for having, at an earlier time, served as counsel for an adverse party in the current matter. The test is whether: 1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; 2) the subject matter of those relationships is substantially related; and 3) the attorney acquired confidential information from the party seeking disqualification. Id; see, also, Morgan v. North Coast Cable Co. (1992), 63 Ohio St.3d 156
(adopting the test set forth in Dana, supra); Haidet, 119 Ohio App. 3
at 325; Hollis v. Hollis (Dec. 15, 1997), Cuyahoga App. No. 71642, unreported.
In this case, there is no question that a past attorney-client relationship existed between appellee and Baker and Javitch Block. Indeed, Baker concedes that he represented appellee from January, 1992 until May, 1996. Thus, the first prong of the test is met.
Appellant argues, however, that the second prong of the test, i.e., the substantial relationship test, is not met in this case. Appellant contends that because the validity of non-compete agreements is determined on a case-by-case basis, each in light of its own facts, appellee must adduce specific facts surrounding the formation of appellant's non-compete agreement to prove the validity of the agreement. Therefore, appellant argues, because Baker did not draft the agreement or covenant at issue in this litigation, Baker's former representation of appellee is irrelevant to the current matter and, accordingly, the subject matter of the current litigation and his former representation of appellee are not substantially related.
We find no case law (and appellant cites none) to support appellant's argument that the type of evidence that the former client must adduce to prove its claim determines whether current and former matters are substantially related, for purposes of the three-part test. Rather, matters are substantially related if there is some "commonality of issues" or a "clear connection" between the subject matter of the former representation and that of the subsequent adverse representation. Haidet,119 Ohio App.3d at 327.
Thus, in Stevens v. Grandview Hospital and Medical Ctr. (Oct. 20, 1993), Montgomery App. No. 14042, vacated on other grounds (Dec. 7, 1993), the Second District Court of Appeals found that counsel's prior representation of his former client was substantially related to the subsequent adverse representation where the subsequent representation involved the same types of claims that counsel had defended against while employed by the former client. In Stevens, the plaintiff's attorney had been trial counsel for the defendant hospital for approximately fifteen years, in charge of reviewing, defending and litigating medical negligence claims against the hospital. Shortly after his employment with the hospital was terminated, he filed a medical malpractice claim against the hospital on behalf of the plaintiff. The trial court granted the hospital's motion to disqualify the plaintiff's counsel and his law firm on the basis of his former position with the hospital and his acquisition of confidential information.
The Second District Appeals Court affirmed the trial court's decision on appeal, finding that the claims in the plaintiff's case were the same types of claims that plaintiff's counsel had defended against while at defendant hospital. Accordingly, the court found the subject matter of the current litigation and the former representation to be substantially related.
The Stevens case is directly on point. Baker represented appellee for nearly five years as primary outside counsel. Moreover, appellant admits that during the course of this representation, Baker was involved in drafting and advising appellee regarding employment agreements similar to the agreement at issue in this case and in efforts to enforce appellee's covenants not to compete. Thus, through his role as primary outside counsel, Baker was fully aware of appellee's policy and strategy regarding negotiation and enforcement of its non-compete agreements. This case involves the same types of claims that Baker defended against while employed by appellee as its outside counsel. Accordingly, Baker's current representation of appellant is substantially related to his prior representation of appellee. Therefore, the second prong of the test is met.
The third prong of the test is also met. "[W] here an attorney himself represented a client in matters substantially related to those embraced by a subsequent case he wishes to bring against the former client, [he is] irrebuttably presumed to have benefitted from confidential information relevant to the current case. In such limited situations there is no necessity to demonstrate actual exposure to specific confidences which would benefit the present client." City of Cleveland v. Cleveland Elec.Illum. Co., 440 F. Supp. 193, 210, quoting Silver ChryslerPlymouth, Inc. v. Chrysler Motors Corp. (C.A.2, 1975).518 F.2d 751. See, also, Stevens, supra ("We may presume that confidences were shared because of the substantial relationship of the subject matter included in the present action and of the area of representation by Menz of his former client.")
Appellant's argument that there is no possibility of a harmful breach of confidence in this case because Baker did not draft or advise appellee regarding the employment agreement at issue in this case is without merit. In light of the substantial relationship between this case and Baker's former representation of appellee, Baker is presumed to have knowledge of confidential information that could be used by him in his representation of appellant.
Moreover, under the Code of Professional Responsibility, an attorney's knowledge is imputed to his firm. Ussury v. St. JosephHosp. (1988), 43 Ohio App.3d 48, 19; Stevens, supra. Absent a showing that the members of the firm have not acquired any information from the disqualified attorney, that firm is likewise disqualified. Id. Appellant has made no such showing here. It is apparent, therefore, that the three-part test set forth in Dana
is satisfied and the trial court properly granted appellee's motion to disqualify Baker and Javitch Block.
Appellant argues, however, citing Kala v. Aluminum Smelting Refining Co., Inc. (1998), 81 Ohio St.3d 1, that the trial court erred in granting appellee's motion to disqualify counsel without conducting an evidentiary hearing and issuing findings of fact.
In Kala, the plaintiff retained attorney Pearson and the law firm of Spangenberg, Shibley Liber to represent him. While the case was on appeal, attorney Pearson left Spangenberg to join Duvin, Cahn Hutton, the law firm representing the defendant. The plaintiff moved to disqualify Duvin, alleging a conflict of interest, and the court of appeals granted the motion. Thus, the issue before the Ohio Supreme Court in Kala was "whether a law firm should be automatically disqualified from representing a party when an attorney leaves his or her former employment with a firm representing a party and joins the law firm representing the opposing party, or whether that law firm may overcome any presumption of shared confidences by instituting effective screening mechanisms." Id. at 3.
The Supreme Court held that in ruling on a motion for disqualification of either an individual (primary disqualification) or the entire firm (imputed disqualification) when an attorney has left a law firm and joined a firm representing the opposing party, a court must hold an evidentiary hearing and issue findings of fact using a three-part analysis:
 1) Is there a substantial relationship between the matter at issue and the matter of the former firm's prior representation;
 2) If there is a substantial relationship between these matters, is the presumption of shared confidences within the former firm rebutted by evidence that the attorney had no personal contact with or knowledge of the related matter; and
 3) If the attorney did have personal contact with or knowledge of the related matter, did the new law firm erect adequate and timely screens to rebut a presumption of shared confidences with the new firm so as to avoid imputed disqualification? Id., syllabus.
Appellant argues that although Kala was clearly intended to apply to "side-switching" cases, and the three-part test announced therein is specific to such cases, the opinion represents a modification of the three-part test announced inDana regarding consideration of a motion for disqualification and should be applied, by implication, to require a hearing on all motions to disqualify. We see no reason to adopt this reasoning. There is nothing in Kala to suggest that an evidentiary hearing is necessary on all motions to disqualify counsel.
Accordingly, we hold that the trial court did not abuse its discretion in granting appellee's motion to disqualify counsel. Appellant's assignment of error is therefore overruled.
It is ordered that appellee recover of appellant its costs herrein taxed.
The court finds there were reasonable grounds for this, appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, J. and PATRICIA A. BLACKMON, J.,CONCUR.
 _________________________________ TIMOTHY E. McMONAGLE PRESIDING JUDGE