[Cite as *State v. Hudson*, 2011-Ohio-6272.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No. 96435

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MARLON HUDSON

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas

Case Nos. CR-533087, CR-537809, and CR-537810

BEFORE: Stewart, P.J., Jones, J., and E. Gallagher, J.

RELEASED AND JOURNALIZED: December 8, 2011

ATTORNEY FOR APPELLANT

R. Brian Moriarty
R. Brian Moriarty, L.L.C.
2000 Standard Building
1370 Ontario Street
Cleveland, OH    44113

ATTORNEYS FOR APPELLEE

William D. Mason
Cuyahoga County Prosecutor

By:    Robert Botnick
Assistant County Prosecutor
The Justice Center
1200 Ontario Street, 9th Floor
Cleveland, OH    44113

MELODY J. STEWART, P.J.:

{¶ 1}   This appeal is a companion case arising out of the same events as contained in *State v. Demario Hudson*, Cuyahoga App. No. 95892.

{¶ 2}   Defendant-appellant Marlon Hudson appeals from his convictions and sentencing for six counts of aggravated robbery and two counts of aggravated burglary, all with firearm specifications.   He complains that (1)

his pleas were not made knowingly, intelligently, or voluntarily; (2) he was not permitted to obtain his choice of counsel or told of the ramifications of joint representation; (3) he was denied effective assistance of counsel; (4) the trial court's denial and/or failure to hold a hearing concerning a psychological examination was an abuse of discretion; and (5) his term of incarceration was not proportionate to those of similarly situated offenders. For the following reasons, we affirm the judgment of the trial court.

{¶ 3} Hudson was charged in three separate indictments with multiple counts of aggravated robbery, aggravated burglary, and kidnaping, all with firearm specifications, along with four counts of gross sexual imposition, and single counts of theft, arson, and possessing criminal tools. Hudson withdrew his not guilty plea on the day of trial and entered guilty pleas to amended indictments. The court sentenced him to 32 years of incarceration.

{¶ 4} In his first assignment of error, Hudson argues that his guilty pleas were not knowingly, voluntarily, or intelligently made because the court did not comply with Crim.R. 11 at the plea hearing. He claims that prior to his guilty pleas, the court did not engage in an appropriate discussion to adequately explain the nature of his plea with respect to his belief that he would receive a maximum sentence of 12 years.

{¶ 5} The standard of review for whether the trial court accepted a plea in compliance with Crim.R. 11(C) is de novo. *State v. Stewart* (1977), 51 Ohio

St.2d 86, 364 N.E.2d 1163. In resolving whether a criminal defendant knowingly, intelligently, and voluntarily entered a plea, we review the record to determine whether the trial court adequately guarded the constitutional and non-constitutional rights set out in Crim.R. 11(C). *State v. Nero* (1990), 56 Ohio St.3d 106, 564 N.E.2d 474. Our review differs, however, depending on the breach of rights appellant raises on appeal. A trial court must strictly comply with informing appellant of his constitutional rights outlined in Crim.R. 11(C)(2)(c). Alternatively, if appellant alleges a violation of a non-constitutional right, set forth in Crim.R. 11(C)(2)(a) and (b), we look for substantial compliance. *State v. Asberry*, 173 Ohio App.3d 443, 2007-Ohio-5436, 878 N.E.2d 1082.

{¶ 6} Crim.R. 11 (C) states in pertinent part:

{¶ 7} "(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:

{¶ 8} "(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

**{¶ 9}** "(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

**{¶ 10}** "(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."

**{¶ 11}** Hudson initially entered a plea of not guilty, but decided to change his plea to guilty prior to trial. Attorney Valentine Schurowliew, co-counsel for Hudson, revealed to the court that he had experienced problems communicating with his client and that this communication problem had impeded his efforts to properly represent Hudson. The trial court inquired further and determined that attorney Stanley Josselson was retained counsel for both Hudson and his brother, co-defendant Demario Hudson. Schurowliew was employed by Josselson and was present to assist. Josselson clarified to the court that he had engaged both defendants in "quite a bit of discussion" concerning their cases. He then told the court that Hudson was prepared to enter his plea.

{¶ 12} The state provided the court with the terms of the amended indictments contained in the plea agreement. The trial court then engaged both defendants in a plea colloquy. Hudson stated that it was his desire that Josselson continue to represent him and that it was his wish to take the plea agreement. The court asked Hudson if he understood that he would be pleading guilty to eight felonies of the first degree, and that each was "possibly punishable by [sic] from 3 to 10 years in yearly increments," and he responded "yes." The court explained to Hudson that he would have "an underlying basic sentence of 9 years" due to firearm specifications, and that "the 9 year sentence would be placed before any sentence on the felonies of the first degree." Hudson stated that he understood.

{¶ 13} The court inquired of Hudson if there were any promises or threats made to induce him to change his plea, and he responded that "[t]hey said that it would be 12 years." The court stated at length that it did not discuss sentencing with either side and does not do so as a matter of policy. The court questioned both the prosecutor and defense counsel with regard to discussions on length of sentence. Both confirmed that no conversations were held with the court concerning sentencing. Josselson added, however, that the prosecutor had agreed not to argue against a minimum 12 year sentence.

{¶ 14} The court asked Hudson how he wished to plead, and he stated "not guilty." With this, the court stated its intention to proceed immediately to trial. Hudson thereafter changed his plea to guilty. When the court asked him if he was "in fact, guilty," Hudson replied "yes."

{¶ 15} In *State v. Weakley*, 8th Dist. No. 93282, 2010-Ohio-2464, the defendant contended that his plea hearing was plagued with deficiencies. This court reviewed the record and found that the trial court addressed the defendant personally to explain the nature of the charges, the consequences of his plea, and the possible, as well as mandatory sentence he faced. Id. at ¶15. The trial court asked the defendant if he was satisfied with his representation and he answered in the affirmative. Id. at ¶16. When the trial court asked the defendant if any promises were made in exchange for his plea, the defendant stated that he was promised that his sentence would not exceed 11 years. With this, the "judge explained that the court had not made any promises regarding sentencing and that only the court can determine the sentence to be imposed, [and also] advised that before [the defendant] pleaded guilty he needed to understand that he could be sentenced to anywhere from the minimum to the maximum." Id. We found that the "record reflect[ed] that appellant's pleas were knowingly, intelligently, and voluntarily made." Id. at ¶18.

{¶ 16} Viewing the totality of the circumstances in the case at bar, it is clear that Hudson knowingly, intelligently, and voluntarily entered his plea of guilt. The colloquy reveals that a meaningful dialogue took place between Hudson and the trial court. The court determined that Josselson was the attorney representing Hudson and had held lengthy discussions with him about his case. The court addressed Hudson and informed him of the rights that he would be waiving. Charges and potential penalties were discussed. The court explained the collateral consequences of the plea, including financial sanctions and postrelease control. The court explicitly clarified to Hudson that no promises concerning sentencing would be enforced. Hudson then made a complete admission of guilt on the record.

{¶ 17} Accordingly, Hudson's first assignment of error is overruled.

{¶ 18} In his second assignment of error, Hudson complains that the trial court erred in not allowing him to obtain counsel of his choice and did not inform him of the ramifications of joint representation. Hudson contends that the court's admonishing of attorney Schurowliew at the plea hearing forced Schurowliew to leave and deprived him of a choice regarding representation.

{¶ 19} "A lawyer represents conflicting interests when, on behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose." *State v. Manross* (1988), 40 Ohio St.3d 180, 182, 532 N.E.2d

735, citing *Columbus Bar Assn. v. Grelle* (1968), 14 Ohio St.2d 208, 237 N.E.2d 298. "The mere representation by one lawyer of two defendants charged with the same offenses does not, of itself, constitute a conflict of interest; whether a conflict exists must be determined by the facts of each case. *Columbus Bar Assn. v. Ross*, 107 Ohio St.3d 354, 2006-Ohio-5, 839 N.E.2d 918, ¶ 26.

{¶ 20} "Unless the trial court knows or reasonably should know that a particular conflict exists or unless the defendant objects to multiple representation, the court need not initiate an inquiry into the propriety of such representation." *Manross*, 40 Ohio St.3d at 181, citing *Cuyler v. Sullivan* (1980), 446 U.S. 335, 347, 100 S.Ct. 1708, 64 L.Ed.2d 333. "Absent special circumstances, *** trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist." *Cuyler*, 446 U.S. at 346.

{¶ 21} Hudson argues that it was unclear whether Josselson or Schurowliew represented him. However, the record demonstrates that Hudson's mother retained Josselson to represent him and his brother, and that Schurowliew was Josselson's employee. Hudson made no objections to Josselson's representation when specifically asked by the trial court. The court asked Hudson if it was his desire for Josselson to continue to represent him, and he replied "yes." The trial court was not aware of any conflict of

interest involving joint representation. In fact, an "attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists." *Holloway v. Arkansas* (1978), 435 U.S. 475, 485, 98 S.Ct. 1173, 55 L.Ed.2d 426. Neither Josselson nor Schurowliew raised the issue of a conflict in this instance. Hudson's second assignment of error is overruled.

{¶ 22} In his third assigned error, Hudson claims that he was denied effective assistance of counsel. He argues that counsel was deficient because Schurowliew did not hold meaningful discussions with him concerning his case, and Hudson believes that his representation was sub par because Schurowliew and Josselson failed to request that his case be placed on the mental health docket to facilitate a psychological evaluation.

{¶ 23} The defendant carries the burden of proving that counsel was ineffective. *State v. Smith* (1985), 17 Ohio St.3d 98, 100, 477 N.E.2d 1128. To substantiate a claim of ineffective assistance of counsel, Hudson must demonstrate that defense counsel's performance was seriously flawed and deficient, and that the results of the trial would have been different had proper representation been afforded. *State v. Foster*, 8th Dist. No. 93391, 2010-Ohio-3186, ¶22, citing *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

**{¶ 24}** However, "a claim for ineffective assistance of counsel is waived by a guilty plea, unless the ineffective assistance caused the guilty plea to be involuntary." *State v. Hicks*, 8th Dist. No. 90804, 2008-Ohio-6284, ¶24. To prove a claim of ineffective assistance of counsel after having pleaded guilty, a defendant "must demonstrate that there is a reasonable probability that, but for counsel's errors, [he] would not have pled guilty and would have insisted on going to trial." *State v. Szakacs*, 8th Dist. No. 92230, 2009-Ohio-5480, ¶15, citing *Hill v. Lockhart* (1985), 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203.

**{¶ 25}** Hudson does not argue that counsel's alleged ineffectiveness caused him to enter a guilty plea. And as earlier noted, when Hudson pleaded not guilty for the second time, the court was ready to proceed with trial. This assignment of error is overruled.

**{¶ 26}** In his fourth assigned error, Hudson argues that if he did in fact request a psychological examination, then it was an abuse of discretion for the trial court to deny his request or fail to hold a hearing on the matter. He claims that the issue of his competency was raised, but that the court nevertheless proceeded directly to a plea hearing and sentencing.

**{¶ 27}** A defendant is presumed competent to stand trial and carries the burden of establishing incompetence. *State v. Hunter*, 8th Dist. No. 89456, 2008-Ohio-794, ¶15-16. The prosecution, the defense, or the court may raise

the issue of a defendant's competence to stand trial in a criminal action. R.C. 2945.37(B). "The failure to hold a mandatory competency hearing is harmless error where the record fails to reveal sufficient indicia of incompetency." *State v. Bock* (1986), 28 Ohio St.3d 108, 110, 502 N.E.2d 1016.

{¶ 28} "A trial court, in making a determination of whether to hold a sua sponte hearing concerning the accused's competence to stand trial, should consider the following: (1) doubts expressed by counsel as to the defendant's competence; (2) evidence of irrational behavior; (3) the defendant's demeanor at trial; and (4) prior medical opinion relating to competence to stand trial." *State v. Rubenstein* (1987), 40 Ohio App.3d 57, 531 N.E.2d 732, paragraph two of the syllabus.

{¶ 29} In *State v. Ortiz*, 9th Dist. No. 06CA009011, 2007-Ohio-4350, ¶ 3, counsel filed a motion to withdraw, alleging that "the relationship between [c]ounsel and [appellant] has broken down and is beyond repair, [and in the same motion] requested a psychiatric evaluation of appellant." The appellant complained that the trial court erred in denying the motion. The assigned error was sustained because "[t]he trial court refused to order a psychological evaluation or hear any other evidence to determine whether appellant was competent to stand trial [and also] failed to engage in any colloquy with appellant to determine whether he understood the nature of the

proceedings against him or whether appellant had sufficient present ability to consult with his counsel." Id. at ¶12.

{¶ 30} Hudson disrupted the proceedings and sheriff's deputies were called in to quell the disturbance. Schurowliew told the court that he felt that Hudson "needs to have some sort of treatment because I do not think that he is a rational person [and that] *** I don't think he's able to assist in his defense." The court then asked numerous questions of Schurowliew in an attempt to determine if his difficulty in communicating with Hudson was attributable to a "mental health issue." Finally, Hudson affirmatively responded when the court asked him if he was "able to under [sic] this hearing as it's occurring [and if he was] satisfied with the representation that [he had] received from [his] lawyer."

{¶ 31} In *State v. Berry* (1995),72 Ohio St.3d 354, 362, 650 N.E.2d 433, the court stated that the fact that a defendant was removed from the courtroom for disruptive behavior did not indicate that he was incompetent to stand trial and thus did not warrant a competency hearing since the incident was relatively minor and happened only once. Although Schurowliew expressed doubts concerning Hudson's rationality and his ability to assist with his defense, he never moved the court for a psychological evaluation. Upon further questioning from the court, Schurowliew conceded that his problem with Hudson stemmed from communication difficulties.

{¶ 32} The record does not contain any evidence that casts doubt on Hudson's ability to understand the nature of the proceedings. Josselson assured the court that meaningful communications with Hudson had occurred prior to the hearing. We find that Hudson had a rational understanding of the proceedings against him and understood the nature of the charges. His fourth assignment of error is, therefore, overruled.

{¶ 33} In his final assignment of error, Hudson argues that the 31 year term of incarceration is not proportionate to similarly situated offenders. In support of his argument, he points out that he has no felony record, and also notes that another co-defendant, Montana Hudson, pled guilty to similar charges and received only four years incarceration after his case was transferred to the mental health docket.

{¶ 34} The standard of review for sentencing requires a court to find error by clear and convincing evidence that a sentence is not supported by the record or is contrary to law. *State v. Dovak*, 8th Dist. No. 90335, 2008-Ohio-4103, ¶5. "Clear and convincing evidence is more than a mere preponderance of the evidence; it is that evidence which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *State v. Patterson*, 8th Dist. No. 84803, 2005-Ohio-2003, ¶4.

{¶ 35} Trial courts are not "required to make findings or give their reasons for maximum, consecutive, or more than the minimum sentences."

*State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. Instead, "the trial court must carefully consider the statutes that apply to every felony case, including R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of an offender and statutes that are specific to the case itself." *Dovak* at ¶9. And, "[i]n order to support a contention that his or her sentence is disproportionate to sentences imposed upon other offenders, a defendant must raise this issue before the trial court and present some evidence, however minimal, in order to provide a starting point for analysis and to preserve the issue for appeal." *State v. Sistrunk*, 8th Dist. No. 91470, 2009-Ohio-1689, ¶ 14, citing *State v. Breeden,* 8th Dist. No. 84663, 2005-Ohio-510, ¶ 80.

{¶ 36} The judgment entry of the court unequivocally states that "the court considered all required factors of the law." Since Hudson failed to raise his claim of disproportionate sentencing with the trial court, and did not provide evidence to demonstrate this alleged error, he has failed to preserve the issue for appeal. Hudson's final assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MELODY J. STEWART, PRESIDING JUDGE

LARRY A. JONES, J., and
EILEEN A. GALLAGHER, J., CONCUR